# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 4644 | **DATE** | 3/21/2001 |
| **CASE TITLE** | VINCENT J. KROCKA vs. CITY OF CHICAGO | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for summary judgment is granted [32-1]. Defendant's motion to strike certain paragraphs is denied as moot [56-1]; Defendants motion to strike Plaintiff's Rule 26 expert testimony is granted [55-1].

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAR 22 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | 68 |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
MAR 2 2 2001

| | |
|---|---|
| VINCENT J. KROCKA, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 98 C 4644<br>) |
| CITY OF CHICAGO, a Municipal Corporation, | ) Judge John W. Darrah<br>) |
| Defendant. | ) MAR 2 2 2001 |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Vincent Krocka (Krocka), commenced an action against defendant, the City of Chicago (City), alleging the Chicago Police Department retaliated against him in violation of the American with Disabilities Act (ADA), 42 U.S.C. § 12203(a). Before this Court is defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c). In addition, defendant has filed a Motion to Strike Certain Paragraphs of Plaintiff's Additional Facts and Portions of Plaintiff's Response to Defendant's Statement of Facts and a Motion to Strike Plaintiff's Expert Testimony.

Defendant first argues that portions of plaintiff's statement of additional facts and response to defendant's statements of undisputed facts should be stricken. The statements found in the paragraphs and/or the particular facts that defendant takes issue with were not relevant and, therefore, not relied upon by the Court. Accordingly, defendant's Motion to Strike is denied as moot.

Defendant also seeks to strike plaintiff's Rule 26 expert testimony. Federal Rule of Evidence 702 allows expert testimony:

68

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of opinion or otherwise. Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) *Daubert*), the Supreme Court established a two-part inquiry for assessing proffered testimony under Rule 702. Such testimony is admissible if the court finds that the "expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592. The first prong tests the reliability of the testimony, and the second prong tests the relevance of the testimony. This test is applied to all proffered expert testimony, be it scientific, technical or specialized in nature. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). The *Daubert* court provided four factors trial courts could use when weighing reliability: (1) whether the expert's technique or theory has been tested; (2) whether it has been subjected to peer review; (3) its known or potential error rate; and (4) whether it enjoys general acceptance within the relevant community. *Daubert*, 509 U.S. at 593-94. The party seeking admission of the expert testimony bears the burden of proving that the proposed testimony meets the above requirements. *Frey v. Chicago Conservation Ctr.*, 119 F.Supp.2d 794, 797 (N.D.Ill. 2000). Furthermore, while the courts are flexible in their application of *Daubert*, "there is no requirement that judges apply only those criteria that the plaintiffs believe are important." *Bourelle v. Crown Equip, Corp.*, 220 F.3d 532, 537 (7th Cir. 2000).

Here, plaintiff's expert, Raymond Risley (Risley), served as a police officer in the City of

Chicago from 1961 through 1999. He also served as the Assistant Deputy Superintendent in charge of the Internal Affairs Division for five years, ending in 1995. Plaintiff offers Riley's testimony that he found it "most troubling" that there was a 258-day lapse in time in the investigation relative to whether Krocka interfered into the investigation concerning another officer's discharge of a weapon and that such a lapse in time was unusual and suggestive of bias. He believed that potential bias may have resulted from the close involvement of the General Counsel to the Superintendent of Police; he believed language used by Zoufal in the initiation report of a Complaint Register (CR) investigation could have caused bias on the part of the investigator and negatively impacted on the required impartiality of that investigation; and he believed it was improper for the recommendation of dismissal to have been based on an aggregation of all the charges, rather than on an individual basis.

Riley based his conclusions on the review of three CR investigation reports he received from Krocka. Riley was aware of other complaints against Krocka but did not ask for any of the other complaints. Riley also reviewed the police department's complaint disciplinary procedure and the Chicago Police Department's Agreement with the Fraternal Order of Police. Riley had no personal knowledge of the investigations relating to Krocka, had not spoken to Krocka before rendering his opinions; had no personal knowledge of the misconduct attributed to Krock, had not conducted any independent investigation of the allegations, never consulted any books, articles, or other reference texts before drafting his report, never reviewed any statistics about the Chicago Police Department's production of CR's, and did not review any notes or CR files relating to anyone other than plaintiff.

The above facts demonstrate that Krocka has failed to establish his expert's opinion is reliable. Riley's opinion is based on his subjective review of three CR's concerning Krocka, the

police department's complaint disciplinary procedure, and the Chicago Police Department's Agreement with the Fraternal Order of Police. Subjective tests may be used by experts, and their use nullifies the applicability of some of the *Daubert* factors. However, subjective tests do not nullify all the factors. *See Frey*, 119 F.Supp.2d at 797.

Riley failed to review any other CRs other than three of Krocka's CR reports. He reached conclusions about the reports and resulting investigation based on the three CR's without doing any other type of investigation concerning the CR's or reviewing any other CR's. He made no comparisons between any of Krocka's CR's and subsequent investigation to any other CR's and investigations. He also made conclusions as to the implications of the amount of time it took for a certain investigation without providing any baseline as to what constituted the "proper" time frame. He was unable to do so because he failed to review any other information concerning investigations into any other CR's. Riley's experience in the police department and the Internal Affairs Department aided in his review. However, methodology which consisted of only reviewing three CR reports given to him by Krocka, and his failure to demonstrate that such a method would be a generally accepted method, render his report speculation and inadmissible as expert testimony. *See Goodwin v. MTD Prod., Inc.*, 232 F.3d 600, 609 (7th Cir. 2000) (expert's proffered testimony not admissible because it was based on speculation); *Bourelle*, 220 F.3d at 538 (lack of testing performed by expert resulted in opinions that were mere speculation and, thus, unreliable); *Frey*, 119 F.Supp.2d at 798 (subjective tests conducted by expert not admissible because expert failed to establish that his methods were generally accepted).

Furthermore, plaintiff's expert's conclusions that some aspects of Krocka's investigation are indicative of bias are not based on scientific, technical, or specialized knowledge but are merely

conjecture. Plaintiff's expert testified that certain aspects of the investigation were "suggestive of bias" and that "potential bias may have resulted," and "could have caused bias." As conjecture or speculation, the expert's opinions are not admissible. *See Daubert*, 509 U.S. at 590. ("'knowledge' connotes more than subjective belief or unsupported speculation"). Accordingly, defendant's Motion to Strike Plaintiff's Rule 26 Expert Testimony is granted.

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). All the evidence and the reasonable inferences that may be drawn from the evidence is viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). However, the nonmovant must still come forward with evidence establishing the elements of his claim on which he bears the burden of proof at trial. As such, he must establish specific facts that show there is a genuine issue for trial. *Miller*, 203 F.3d at 1003.

On January 28, 1980, Krocka was hired as a police officer by the Chicago Police Department. (Def.'s 56.1(a)(3) Statement ¶ 2). On February 1, 1995, Krocka filed suit against the City, alleging that the City discriminated against him pursuant to the ADA because he suffered from depression (1995 ADA lawsuit). (Id., at ¶ 4). Krocka was deposed on December 4, 1995; January 12, 1996; January 19, 1996; January 30, 1996; and February 6, 1996, in relation to the 1995 ADA lawsuit. (Id., at ¶ 5).

On May 12, 1997, Krocka, in his capacity as a Chicago Police Officer, reported to the scene of an off-duty shooting involving another Chicago Police Officer. Krocka gave the police officer legal advice, including advising the officer not to speak with anyone until a union representative

arrived. (Def.'s 56.1(a)(3) Statement ¶ 8). Krocka's conduct on this date became the subject of a CR investigation, CR #236799. (Id., at ¶ 7).

A jury trial was held on Krocka's 1995 ADA lawsuit on November 3-6, 1997. On November 6, 1997, the jury returned a verdict in favor of the City and found that Krocka was not disabled under the ADA. (Def.'s 45.1(a)(3) Statement ¶ 9). During the trial, Krocka admitted under oath to engaging in conduct that violated the Rules and Regulations of the Chicago Police Department. (Id., at ¶ 10). The conduct included the admission that he drank alcohol while on duty as a police officer in 1981 and 1992, he slept with prostitutes while working as a police officer, he falsified and/or willfully omitted information on official department records, he failed to report a firearm discharge by another police officer and omitting the discharge of the weapon from his official police report, and he called counsel for the City a "cunt" in December of 1995, during a proceeding of the 1995 ADA lawsuit. (Id., at ¶¶ 11-15). On November 6, 1997, Donald Zoufal (Zoufal), a Special Assistant Corporation Counsel who represented the City during the 1995 ADA lawsuit, requested a CR investigation based on Krocka's trial admissions. (Id., at ¶ 16). Zoufal was aware of some of the misconduct about which Krocka testified to from his deposition taken in 1996; but Zoufal did not request a CR until the 1997 trial was completed because portions of the transcript were subject to a protective order, and he did not want the litigation "to be bogged down in potential side issues or allegations of witness intimidation." (Id., at ¶ 20). The Internal Affairs Division of the Chicago Police Department issued a CR in relation to the misconduct to which Krocka admitted to during his 1997 testimony. Id., at ¶ 17). Based on an investigation, Michael Hoke, Assistant Deputy Superintendent of the Chicago Police Department (Hoke), recommended that Krocka be separated from employment as a police officer. (Id., at ¶ 18). In February 1998, the allegations in the previous

6

CR # 236799 were sustained; and Hoke made an independent recommendation that Krocka be separated from his employment based on his May 12, 1997 conduct. (Id., at ¶ 19).

On June 30, 1998, the City served charges on Krocka setting forth allegations of numerous provisions of Article V of the Chicago Police Department's Rules and Regulations and recommended Krocka's discharge as a police officer. These allegations included: (a) violation of any law or ordinance; (b) any action or conduct which impedes the Department's efforts to achieve its policy and goals or brings discredit upon the Department; (c) any failure to promote the Department's efforts to implement its policy or accomplish its goals; (d) disobedience of an order or directive, whether written or oral; (e) insubordination or disrespect towards a supervisor on or off duty; (f) disrespect to or maltreatment of any person while on or off duty; (g) making a false report, written or oral; and (h) drinking alcoholic beverages while on duty or in uniform or transporting alcoholic beverages while on duty and not in the performance of duty. (Def.'s 56.1(a)(3) Statement ¶¶ 21-22). On July 1, 1998, Krocka was suspended without pay. (Id., at ¶ 23). On May 11, 1999; May 12, 1999; June 7, 1999; and June 23, 1999, Krocka had an evidentiary hearing before the Police Board in relation to the recommendation of his discharge. (Id., at ¶ 25). On October 29, 1999, the Police Board issued its findings and decision, and ordered Krocka's discharge. (Id., at ¶ 26).

To prevail on a claim of retaliation, a plaintiff must offer direct evidence of retaliation or proceed under a burden-shifting method. *Contreras v. Suncoast Corp.*, 237 F.3d 756, 765 (7th Cir. 2001) (*Contreras*). Krocka has not offered any direct evidence of retaliation; therefore, he must make a prima facie case for discriminatory retaliation. Under ADA, a prima facie case requires that plaintiff prove that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the two events. *Contreras*, 237

7

F.3d at 765. If the plaintiff establishes a prima facie case, a rebuttable presumption is created; and the employer must come forward with evidence of a legitimate, nondiscriminatory reason for its actions. If the employer meets this requirement, the burden shifts back to the plaintiff to demonstrate, again, by a preponderance of the evidence, that reasons proffered by the employer are actually a pretext for unlawful retaliation. *Contreras*, 237 F.3d at 765.

Defendant does not contest that Krocka meets the first and second requirements of a prima facie case. Defendant argues that Krocka cannot demonstrate that there is a causal relationship between the filing of the 1995 ADA lawsuit and his subsequent suspension and discharge. Krocka argues that the timing of the filing of the charges against him and Zoufal's role in the initiation of the investigation demonstrate a causal connection between the 1995 ADA lawsuit and his termination.

"Timing may be an important clue to causation but does not eliminate the need to show causation." *Bermudez v. TRC Holdings, Inc*, 138 F.3d 1176, 1179 (7th Cir. 1998) (internal citation omitted). Absent other evidence of retaliation, a temporal relationship is insufficient to survive summary judgment. *Contreras*, 237 F.3d at 765. Here, one of the CR investigations was initiated the day the 1995 ADA lawsuit trial ended in defendant's favor. However, a previous CR investigation (#236799) had already been pending for at least six months, and this investigation also resulted in a recommendation of Krocka's discharge. In addition, Zoufal has averred, in an uncontradicted affidavit, that the reason he waited until after the trial to initiate a request for an investigation was because some of the materials were under a protective order and that he did not want to disturb the trial with potential issues or allegations of witness intimidation.

Plaintiff's allegation that Zoufal's involvement indicates a causal connection also fails.

Krocka argues that Zoufal harbored "ill will" against him because Zoufal stated that he found a ruling in the 1995 ADA lawsuit "troubling" because the ruling would require bargaining. Plaintiff has failed to show that Zoufal's statement that he was "troubled" by a ruling that occurred in June 1997 proves ill will toward Krocka that was causally connected to initiating an investigation almost six months after that ruling. *See Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir. 1998) (five-month span between filing of EEOC claim and dismissal too long to support a causal link).

Plaintiff also argues that "but for" his filing the 1995 ADA lawsuit and his decision to proceed with trial, no investigation would have been initiated because it was the statements from trial that led to his termination. Krocka correctly points out that a causal connection is shown by a plaintiff demonstrating that defendant would not have taken the adverse action "but for" the protected activity. *McKenzie v. Illinois Dept. of Transp.*, 92 F.3d 473, 483 (7th Cir. 1996). However, in this case, the protected activity is the filing of the lawsuit, not the resulting testimony from such lawsuit. Under Krocka's theory, an employer would have to ignore any facts it learned once an employee files suit, and the employer could not initiate proceedings against the employee because the facts were obtained by the initiation of a protected activity. In this case, Krocka would have the Chicago Police Department ignore admissions by the plaintiff that he engaged in improper and criminal activity while on duty as a police officer. The ADA imposes no such restriction. *See generally Nashville Banner Pub. Co*, 513 U.S. 352, 362 (1995) (finding in the context of after-acquired evidence in an age discrimination case that, "[o]nce an employer learns about employee wrongdoing that would lead to a legitimate discharge, we cannot require the employer to ignore the information ... even if the information might have gone undiscovered absent the suit."

Assuming argumendo, that Krocka could establish a prima facie case, he fails to demonstrate that the defendant's reason for discharging him was a pretext for retaliation. A plaintiff can establish pretext by showing that the employer's explanation is unworthy of credence or that a discriminatory reason more likely motivated the employer. *Debs v. Northeastern Illinois Univ.*, 153 F.3d 390, 395 (7th Cir. 1998). Pretext in this context does not mean a mistake; rather, it means "a lie, specifically a phony reason for some action." *Russel v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir 1995). An honest belief in the nondiscriminatory reason offered by the decision-maker will be sufficient even if the reasons are foolish, trivial, or even baseless. *Debs*, 153 F.3d at 396.

Here, defendant has come forward with a legitimate, nondiscriminatory reason for its actions – plaintiff's violation of numerous Chicago Police Department Rules and Regulations.

Krocka argues that defendant's knowledge of the misconduct prior to the actual trial and its failure to take action at that time demonstrates the defendant's pretext for discharging him. However, as previously stated, part of Krocka's misconduct which lead to his dismissal was based on conduct and an investigation initiated six months before the trial, and Zoufal has articulated the reason he did not request an investigation until after the trial. Furthermore, Krocka does not dispute that he engaged in all of the conduct that was the basis of the investigation and his ultimate termination.

Krocka also argues that information he provided on a different Chicago Police Officer that was involved in prostitution while on duty demonstrates Krocka was singled out for retaliatory treatment because that officer partook in similar, if not worse, conduct and received less severe discipline than Krocka. Plaintiff did submit a summary of a 1994 investigation of a fellow police officer. However, the summary fails to establish that the officer in the 1994 investigation was

similarly situated to defendant, i.e., testimony under oath of misconduct and illegal activity, that the 1994 investigation was similar to investigations that took place in 1997/1998, and that the officer received less severe discipline than Krocka because there is no evidence of what discipline the officer actually received. Plaintiff has failed to offer evidence to infer that the defendant's rationale for his termination was pretextual for retaliation.

For the reasons stated, defendant's Motion for Summary is granted.

Dated: March 21, 2000

JOHN W. DARRAH
United States District Judge